**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| KRYSTAL MAGEE, | ) CASE NO. 5:09-CV-2078 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) MAGISTRATE JUDGE VECCHIARELLI |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) **MEMORANDUM OPINION** |
| Defendant. | ) **AND ORDER** |

Plaintiff Krystal Magee, challenges the final decision of the Commissioner of

Social Security, Michael J. Astrue ("Commissioner"), denying her claim for

Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. §§

416(I), 423 *et seq.* (the "Act").  This Court has jurisdiction pursuant to 42 U.S.C. §

405(g).  This case is before the undersigned United States Magistrate Judge pursuant

to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court AFFIRMS the final decision of the

Commissioner.

### I.  PROCEDURAL HISTORY

Plaintiff applied for SSI on August 11, 2005, alleging a period of disability

commencing June 27, 2006.  The Commissioner denied her claim initially and on

reconsideration.  Plaintiff filed timely request for an administrative hearing.

On January 9, 2009, Administrative Law Judge Carol Baumerich ( "ALJ") held a

hearing on Plaintiff's claims.  Plaintiff, a medical expert and a vocational expert, testified

at the hearing.  On March 4, 2009, the ALJ found that Plaintiff was not under a

"disability" as defined by the Act.

This decision became the final decision of the Commissioner when the Appeals

Council denied further review.  Plaintiff filed an appeal to this Court.

On appeal, Plaintiff claims: (1) the ALJ did not articulate a valid basis for

discounting the ME's opinion; (2) the ALJ did not articulate a valid basis for failing to

give controlling weight to the treating source's opinion; (3) the ALJ did not articulate any

basis for finding Plaintiff not credible; and (4) substantial evidence did not support the

ALJ's determination that Plaintiff was capable of performing jobs that exist in significant

numbers in the regional and national economies.

### II.  EVIDENCE

**A.   Personal and Vocational Evidence**

Plaintiff was 24 years old at the time of the ALJ's decision (Tr. 125).  She had a

ninth grade education (Tr. 31), and attended GED classes for one and a half months,

but did not complete them (Tr. 30-31, 52).  She claimed that she was able to read at a

fifth grade level (Tr. 35).  She had past work experience as a fast food cook at

2

McDonald's restaurant, but quit her job after one month when she became pregnant (Tr. 32, 129).  She also worked at Burger King, but quit when she moved and the location was no longer convenient to work (Tr. 33-34).  Plaintiff reported that her daily activities included living independently in her own apartment with her three-year old daughter and five-year-old twin sons (Tr. 26-27); taking care of herself and her three children, including bathing, dressing, and preparing meals (Tr. 28); taking her sons to and from the school bus stop (Tr. 27); and performing household chores, such as grocery shopping and laundry(Tr. 29).  Plaintiff was able to do errands driving a car or riding a bus independently (Tr. 34-35).  She was able to calculate simple math equations, figure out how much to pay, and count her change (Tr. 35).  She was able to read well enough to read labels on food and instructions or signs in grocery stores (Tr. 35).

## B.    Medical Evidence

### 1.    Child Guidance Centers

An intake assessment form from Child Guidance Centers when Plaintiff was 16 years of age indicates that Plaintiff was subject to physical abuse, sexual abuse, and neglect as a child and was eventually abandoned by her birth mother (Tr. 251-56).  Plaintiff was diagnosed with an adjustment disorder with depressed mood and sexual abuse and neglect of a child (Tr. 256).

A psychiatric evaluation reported excessive sleeping, suicide ideation, and feelings of hopelessness (Tr. 260).  Plaintiff was prescribed Prozac, but switched to Celexa after she complained of stomach problems (Tr. 263, 269).

In Summer 2002, Plaintiff had a miscarriage and was demonstrating grief issues, suicidal thinking, sleep and appetite disturbances, and low energy (Tr. 266).  In

3

August 2002, Child Guidance discharged Plaintiff because she no longer wanted to continue receiving treatment there.

### 2.      Portage Path Behavioral Health

In June 2006, Diana Marshall, APRN, BC, a clinical nurse specialist at Portage Path Behavioral Health, completed a psychiatric evaluation of Plaintiff (Tr. 246-49). Nurse Marshall observed that Plaintiff was a "very pleasant" woman who appeared her stated age of 21 years old, and was very nicely dressed and well groomed (Tr. 247). She was on time for her interview, was alert and oriented in all spheres, and her speech was normal in rate and tone (Tr. 247).  Plaintiff was somewhat fidgety and restless, but her thoughts were organized, and content relevant (Tr. 247).  She had a sad mood and reactive affect, and denied suicidal or homicidal ideation (Tr. 247).  She showed no signs of delusions or hallucinations (Tr. 247).  Her attention span was adequate for the interview (Tr. 247).  Plaintiff told the nurse that she had been experiencing stressful symptoms for a long time, but had never followed through with any consistent treatment (Tr. 248).  She exhibited symptoms of depression and anxiety, which affected her daily functioning and caused her distress (Tr. 248).  She demonstrated some insight into her situation and expressed motivation to carry through with treatment this time (Tr. 248). Plaintiff was prescribed antidepressant medication for her symptoms (Tr. 248-49).

In October 2006, Sheila G. Garten, L.S.W., a licensed social worker and outpatient therapist at Portage Path Behavioral Health, completed a daily activities questionnaire (Tr. 222-25).  Garten had seen Plaintiff beginning in May 2006, through October 2006 (Tr. 225).  Garten noted that Plaintiff lived in an apartment with her children, and was estranged from her family, but visited her friends, at times for six or

4

seven hours, which she spent talking with them (Tr. 222).  Plaintiff stated that she felt her supervisors and co-workers were talking about her, but she had never been disciplined or fired (Tr. 222).  She claimed to have a poor stress tolerance and could not be around people, and had significant deficits in basic reading and writing skills (Tr. 222).  Garten diagnosed Plaintiff with a major depressive disorder, post traumatic stress disorder (PTSD), and a generalized anxiety disorder (Tr. 223).

Garten found that Plaintiff demonstrated adequate abilities to remember, understand and follow directions (Tr. 223).  She had adequate to poor abilities to maintain attention, and limited ability to sustain concentration, but this was improving with treatment (Tr. 223).  She also had limited social interaction and adaptation, and could only tolerate low stress situations (Tr. 223).  Her appearance was adequate, and her speech was normal in rate and tone (Tr. 224).  Plaintiff had a sad mood at times, and her affect was reactive demonstrating a range during the interview that was congruent with the topic at hand (Tr. 224).  She had no thinking disorders, and her orientation was normal for person, place, and time (Tr. 224).  She had significant issues with cognitive functioning, such as concentration, memory, abstract reasoning, fund of information, and range of intelligence, but she had recently started taking Strattera medication and her concentration had improved (Tr. 224).  She had no alcohol or drug use reported (Tr. 224).  She was able to prepare meals, such as fried chicken, rice, and corn, and did all of the household chores (Tr. 225).  Her personal hygiene was adequate; her shopping was adequate; she took public transportation and was able to pay bills (Tr. 225).  Plaintiff was compliant with treatment (Tr. 225).

Records from PPBH for the period June 2006 though January 2007 indicated

5

that Plaintiff had regularly attended psychiatric medication appointments and individual therapy sessions (Tr. 245-48).  Her GAF score was 50 and she was prescribed Effexor, Strattera and Zoloft (Tr. 245 and 248).

In February 2007, Nurse Marshall completed a medical source assessment (Tr. 273-74).  According to the assessment, Plaintiff was unable to perform detailed tasks, maintain concentration or attention for extended periods, work in coordination with others, or make simple work-related decisions (Tr. 273).  She had a 11-20% reduction of her ability to understand and remember very short, simple instructions, and had only a 10% reduction of her ability to perform very short and simple instructions and sustain an ordinary routine without supervision (Tr. 273).  She had significant limitations of more than 20% of all activities involving social interaction, but had no significant limitations of adaptive functioning, such as responding to changes in a work setting, being aware of hazards and taking precautions, traveling to unfamiliar places, and setting realistic goals (Tr. 274).  Marshall reported that Plaintiff's severe attention problems interfered with her ability to understand and follow instructions, and she was easily distracted and had trouble remembering instructions (Tr. 274).

She had emotional problems that caused her to mistrust and be wary of other people, as she had a history of being victimized (Tr. 274).  She had developed excellent self-protective skills that caused conflict when dealing with others (Tr. 274).

In March 2008, Nurse Marshall completed another medical source assessment (Tr. 289-90).  According to Marshall, Plaintiff did not have significant limitations of understanding, remembering, or carrying out very short, simple instructions, but was unable to understand, remember, or carry out detailed instructions (Tr. 289).  She also

6

had no ability to complete a workday or work week or perform activities within a schedule (Tr. 289).  She was able to interact appropriately with the general public and ask simple questions, and maintain socially appropriate behavior 90% of the time, but could not respond appropriately to changes or set realistic goals (Tr. 290).  According to Marshall, Plaintiff's abilities to concentrate, undertake, and complete tasks were very limited, and she became distracted, overwhelmed and easily frustrated (Tr. 290).  Her ability to read and write was markedly impaired and she was unable to perform at an adult level in these areas (Tr. 290).

On March 27, 2008, a treatment plan review at Portage Path indicated that Plaintiff had not consistently attended therapy and did not follow through with her other treatment referrals (Tr. 298).  In April 2008, Plaintiff reported that she was doing well on her medications, including Strattera, and was able to focus (Tr. 299).  She had good eye contact, was pleasant, and had organized thoughts (Tr. 299).  She complained of being distracted at school, where she was hoping to get her GED through Project Learn, and an increase in her Strattera medication was suggested (Tr. 299).

In May 2008, Plaintiff's therapist reported that Plaintiff had been meeting her responsibilities despite depression and anxiety, and that her children continued to motivate her (Tr. 300).  She went through periods of depression and withdrew from services for about five months (Tr. 300).  She was taking Strattera, Vistaril, and Prozac (Tr. 300).  She was stable on her current combination of medications (Tr. 300).  The therapist recommended individual counseling and psychiatric services (Tr. 300).

In September 2008, Plaintiff returned to Portage Path and reported that she had not been taking her medications during the summer months (Tr. 321).  Without her

medications, Plaintiff noticed a return of her symptoms, and wanted to get back on her medications (Tr. 321). Plaintiff appeared adequately groomed; her speech was normal; her thoughts were organized and relevant; and her mood was mildly dysphoric (Tr. 321). She was cooperative and appropriate, alert and oriented, and had adequate insight and judgment (Tr. 321). She was given prescriptions for Prozac, Vistaril, and Strattera, for depression, anxiety, and attention (Tr. 322).

One month later, Plaintiff reported improvement on her medications and her plan was to continue with the prescribed treatment (Tr. 325). She continued to follow up in November and December 2008 (Tr. 326-29).

### 3. State Agency Reviewing Psychologists

On October 18, 2006, Karen Wasserman, Psy.D., a state agency psychologist, reviewed Plaintiff's medical records and assessed her psychological functioning (Tr. 227-43). Dr. Wasserman considered Plaintiff's impairments in the context of Listing §§ 12.04 and 12.06, for affective disorders and anxiety related disorders, and concluded that Plaintiff did not meet or equal any Listings of impairments (Tr. 227). According to Dr. Wasserman, Plaintiff had mild restrictions in activities of daily living and social functioning, moderate limitations of concentration, persistence, or pace, and no episodes of decompensation, each of extended duration (Tr. 237).

Dr. Wasserman indicated that Plaintiff was not significantly limited in most areas of mental functioning, including understanding, remembering, and carrying out very short and simple instructions; performing activities within a schedule, sustaining a routine without supervision, and working in coordination with others (Tr. 241). She had moderate limitations in understanding, remembering, and carrying out detailed

instructions, and maintaining attention and concentration for extended periods (Tr. 241).

She had no significant limitations interacting appropriately with others, getting along with

co-workers and peers without distracting them or exhibiting behavioral extremes,

traveling to unfamiliar places, and setting realistic goals (Tr. 242).  She had moderate

limitations in completing a normal workweek, accepting criticism from supervisors, and

responding appropriately to changes in the work setting (Tr. 242).  According to Dr.

Wasserman, she had no marked or extreme limitations in any areas (Tr. 242).

     Dr. Wasserman explained that the medical evidence showed Plaintiff had alleged

trouble with reading, writing, understanding instructions, and being easily distracted, but

was on medications for these symptoms and was receiving outpatient psychological

treatment for five months (Tr. 243).  She was compliant with treatment (Tr. 243).  She

had never had inpatient treatment for her psychiatric condition (Tr. 243).

     Dr. Wasserman noted that Plaintiff resided in an apartment with her children and

was able to visit her friends (Tr. 243).  She had poor stress tolerance and had difficulty

being around people, often thinking that others were talking about her (Tr. 243).  She

was currently taking Strattera and Effexor; her concentration was improving and her

prognosis was good (Tr. 243). Dr. Wasserman noted that Plaintiff's typical day involved

getting out of bed, caring for her children, cooking, cleaning, watching television,

reading, and playing games with her children (Tr. 243).  She claimed to have difficulty

reading and writing, but did read to her children (Tr. 243).  She prepared meals on a

daily basis, and had worked in the past as a cook (Tr. 243).  She dropped out of school

in the ninth grade, but did not attend special education classes (Tr. 243). She was able

to shop, take public transportation, pay bills, and count change (Tr. 243).  Dr.

9

Wasserman opined that Plaintiff could work best in a relatively static environment where changes could be explained and she was able to interact adequately on a superficial basis (Tr. 243).  In February 2007, Frank Orosz, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and affirmed Dr. Wasserman's evaluation findings and opinions as written (Tr. 312).

### 4.    Dr. Spring, Medical Expert

Gottfried Spring, M.D., a psychiatrist and medical expert at Plaintiff's hearing, reviewed Plaintiff's medical records and testified that she had diagnoses of depression, post-traumatic stress disorder (PTSD), and attention deficit/hyperactivity disorder (ADHD) (Tr. 54).  Dr. Spring testified that Plaintiff had a mild limitation of her activities of daily living, pointing out that she rode a bus, shopped, took her children to and from the school bus stop, and took care of her children on a daily basis (Tr. 56).  According to the medical expert, Plaintiff had a marked limitation in social functioning, based on her explosive personality type and Nurse Marshall's assessment that Plaintiff had marked limitations in this area (Tr. 57-58, referring to exhibits 7f and 10f, at Tr. 274, 290).  The medical expert also assessed a marked limitation of concentration, persistence and pace (Tr. 58, referring to exhibits 7f and 10f, at Tr. 273, 289).  He testified that Plaintiff had repeated episodes of decompensation, based on her testimony that she became agitated, impulsive, and out of control under stress (Tr. 59).  He also cited Nurse Marshall's statement in exhibit 10f, that explained in general terms that she became easily distracted, overwhelmed, and frustrated (Tr. 59, referring to exhibit 10f at Tr. 290). Dr. Spring concluded that Plaintiff met mental impairment Listings §§ 12.02, 12.04, and 12.06, for organic mental disorders, affective disorders, and anxiety related

10

disorders (Tr. 60).

## C.     Vocational Expert Testimony

At Plaintiff's administrative hearing, Thomas Nimberger, a vocational expert ("VE"), considered job possibilities for an individual with the same age, education, and work experience as Plaintiff, with hypothetical restrictions for work that involved simple, routine, and repetitive tasks; in a work environment free of fast-paced production requirements; only simple work related decisions; where changes in the workplace would be explained; there would be only superficial interaction with co-workers, supervisors, and the general public; no arbitration, negotiation, or confrontation; no supervision of others, responsibility for the care, well-being, or safety of others; and work would be limited to elementary reading and math skills at the fourth grade level (Tr. 63-64).  In response to this hypothetical question, the vocational expert identified approximately 2,980 unskilled jobs in the local Northeastern Ohio economy, as an office cleaner, janitor, and cafeteria assistant, as well as an equivalent number of such jobs in the national economy (Tr. 64-65).

The ALJ then asked a second hypothetical question with all the same limitations as stated in his first hypothetical, but adding another limitation – that the worker would be off task for 20% of the workday.  The VE testified that there would be no jobs for such an individual (Tr. 66).

## III.     STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when

11

she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ found that Plaintiff suffered from the severe impairments of recurrent major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder,

attention deficit hyperactivity disorder, and avoidant personality disorder, but did not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1.  The ALJ determined that Plaintiff has residual functional capacity to perform a full range of work at all exertional levels, but is limited to work that involves simple, routine, and repetitive tasks in a work environment free of fast paced production requirements and requires only simply, work-related decisions with few, if any, workplace changes, where changes in the workplace will be explained; limits Plaintiff to superficial interactions with supervisors, coworkers, and the public; does not require Plaintiff to perform arbitration, negotiation, confrontation, or supervision of others; does not require Plaintiff to assume responsibility for the safety and well-being of others; and requires only elementary reading level and math skills.

The ALJ found that Plaintiff does not have any past relevant work experience, but that considering her age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she can perform. Thus, the ALJ ultimately determined that Plaintiff is not under "disability" as defined by the Act.

## V.  STANDARD OF REVIEW

This Court's review is limited to determining whether substantial evidence exists in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a

13

reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4ᵗʰ Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. ANALYSIS

### A. Medical Expert Opinion

Plaintiff asserts that the ALJ failed to articulate a valid basis for discounting the ME's opinion that Plaintiff meets Listings 12.02 (organic disorders), 12.04 (affective disorders), 12.06 (anxiety disorders), and 12.08 (personality disorders) in combination. Plaintiff maintains that the ALJ "must articulate a valid basis for disregarding treating source opinions and she cannot disregard an ME's opinion that relies on treating source opinions" in this case, the opinion of a nurse practitioner. (Doc. 15 at 9.)  Notably, Plaintiff makes this assertion without citation to law.

Regardless, the ALJ did state valid reasons for rejecting the opinion of the nurse practitioner, as explained in Section VI.B. of this Memorandum Opinion and Order, *infra*. Moreover, the ALJ provided additional reasons for finding the opinion of the ME unpersuasive.

The ALJ gave greater weight to the opinions of state agency physicians, who did not find that Plaintiff met the Listings, as their opinions were more consistent with the record.  The ALJ found only mild restrictions in activities of daily living, citing the facts that Plaintiff reported that her typical day included getting up, taking care of her minor children, cooking, cleaning, watching television, and reading, playing with, and bathing

14

her children and that Plaintiff acknowledged that she was able to shop, take public

transportation, pay bills, and count change.  The ALJ further found that Plaintiff had

moderate difficulties in social functioning, noting (1) that Plaintiff, while estranged from

her family, was still visiting with friends for periods of 6 or 7 hours, during which they

engaged in conversation and (2) that she had no major interactional difficulties with any

of her mental health providers.  Finally, the ALJ found that the claimant had moderate

difficulties with regard to concentration, persistence or pace.  In support of this finding,

the ALJ cited assessments from 2006 and 2008, where Plaintiff was alert and oriented,

her thoughts were organized and content was relevant, she had an adequate attention

span, her insight and judgment were characterized as fair, and presented with the

normal rate and rhythm of speech.

Thus, based on the opinions of the state agency physicians, the evidence

regarding Plaintiff's daily life activities, and the assessments in 2006 and 2008, the ALJ

stated a proper basis for rejecting Dr. Gottfried's opinion.  Thus, the ALJ's decision to

give limited weight to his opinion was supported by substantial evidence.

### B.    Weight afforded to an "other source"

Plaintiff asserts that the ALJ did not articulate a valid basis for failing to give the

opinion of Nurse Marshall appropriate weight.  In her decision, the ALJ afforded

Marshall's opinion no probative weight.

Plaintiff acknowledges that Marshall, a nurse practitioner, is not an "acceptable

medical source."  Under applicable social security regulations medical opinions "that

reflect judgments about the nature and severity of your impairment(s), including your

symptoms, diagnoses and prognoses, what you can still do despite impairment(s), and

15

your physical or mental restrictions," may only be given by "acceptable medical

sources." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Nurse practitioners are

considered "other sources" whose opinions may be used as evidence to show the

severity of a claimant's impairments. 20 C.F.R. §§ 404.1513(d), 416.913(d).

Social Security Ruling 06-03P clarifies how the Commissioner should consider

opinions and other evidence from sources such as nurse practitioners who are not

"acceptable medical sources."   The ruling explains that information from such sources

"may provide insight into the severity of the impairment(s) and how it affects the

individual's ability to function." *Id.*  The ruling further notes that:

> the case record should reflect the consideration of opinions from medical sources
> who are not "acceptable medical sources" . . . .  The adjudicator generally should
> explain the weight given to opinions from these "other sources," or otherwise
> ensure that the discussion of the evidence in the determination or decision allows
> a claimant or subsequent reviewer to follow the adjudicator's reasoning, when
> such opinions may have an effect on the outcome of the case.

*Id.*

In this case, the ALJ explained that she was rejecting Marshall's opinion because

her assessments appear to based largely on Plaintiff's self-reporting of symptoms and

functional limitations.  The ALJ further stated that Marshall's opinion was inconsistent

with the facts of the record discussed in Section IV.A, of this Memorandum Opinion and

Order, *supra*.  While the Court recognizes, as Plaintiff argues, that Marshall had some

specialized knowledge about mental health and was familiar with Plaintiff, the ALJ did

not err by rejecting her opinion. As indicated above, Marshall is not a treating source

and her opinion is not entitled to any special level of deference.  The ALJ stated specific

reasons, supported by substantial evidence, why she found no probative value in

16

Marshall's opinion.  Because substantial evidence supports the ALJ's decision to reject Marshall's opinion, the Court is required to uphold that decision, regardless of whether this Court might have resolved the issue differently if it had conducted a *de novo* review. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)(per curiam); *see also Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260, 263 (6th Cir. 1988).

**C.      Plaintiff Credibility**

Plaintiff also argues the ALJ improperly discounted her credibility under Social Security Ruling ("S.S.R.") 96-7p.  According to Plaintiff, the ALJ erred because she did not specify which of Plaintiff's statements were not credible.  However, Plaintiff does not cite to any law in support of her assertion that the ALJ must specifically identify each statement that she finds not credible.  Further, S.S.R. 96-7p does not support Plaintiff's assertion, as it only provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Moreover, an ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing a witness's demeanor and credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In her decision, the ALJ set forth the standard for evaluating a claimant's

17

symptoms and credibility and cited in support of her finding the objective medical

evidence of record relative to Plaintiff's allegations, previously discussed.  In addition,

the ALJ noted factors more directly related to the subjective standards for evaluation of

symptoms.  Specifically, the ALJ cited conservative treatment of Plaintiff, the fact that

Plaintiff had beneficial results with medication, and that Plaintiff has not always been

fully compliant with her treatment plan.

Plaintiff asserts that non-compliance is part of her mental impairment and, thus,

should not be used in the determination of credibility.  While it is recognized that "[f]or

some mental disorders, the very failure to seek treatment is simply another symptom of

the disorder itself," *White v. Commissioner of Social Security*, 572 F.3d 272, 283 (6th Cir.

2009),  there is insufficient evidence in the record supporting that this is the case for

Plaintiff.   While Plaintiff cites generally a Medical Source Assessment completed by

Marshall, this form provides no specific statement that non-compliance is attributed to

her mental health issues.  Moreover, as stated previously, the ALJ appropriately found

that Marshall's opinion lacked probative value and was not entitled to deference.

The ALJ sufficiently stated her reasons for not finding Plaintiff fully credible, as

required by S.S.R. 96-7p and Sixth Circuit precedent.  *See Atterberry v. Secretary of

Health and Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989).  The ALJ's decision

regarding Plaintiff's credibility was not erroneous.

## D.    Hypothetical Question

Plaintiff asserts that the ALJ erred in finding that Plaintiff was capable of

performing jobs that exist in significant numbers in the region and national economies

because of improper hypothetical question presented to the VE.

18

A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Secretary of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). A hypothetical question is not erroneous where at least one doctor substantiates the information contained in the question. *See Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam).

In the instant case, the ALJ presented the VE with two hypothetical questions. The ALJ's first hypothetical question asked what job possibilities there are for a person with Plaintiff's background, experience, and the limitations described in her RFC finding. (Tr. 63-64.) In response to this question, the Vocation Expert identified approximately 2,980 unskilled jobs as an office cleaner, janitor, and cafeteria assistant, as well as an equivalent number of jobs in the national economy.

The ALJ then raised a second hypothetical question describing the same person in the first hypothetical, but added the limitation that the person would be e off-task for 20% of the workday. (Tr. 66.) The VE replied that there would be no jobs that this person could perform. (*Id.*)

Plaintiff asserts that the ALJ relied on an incorrect hypothetical in finding that a substantial number of jobs existed that Plaintiff could perform. However, it is clear that the ALJ relied on the answer from the first hypothetical in her decision and her RFC determination is congruent with that hypothetical. The second hypothetical question,

does not negate the validity of the first. The ALJ clearly rejected Plaintiff's assertion that she would not be able to work 20% of the time in her RFC finding, which placed no such limitation. Moreover, that finding is supported by substantial evidence, including the opinions of two stage agency psychologists who refuted Plaintiff's claim.

Because the VE's answers were given in response to a hypothetical question that accurately portrayed Plaintiff's impairments, the ALJ could justifiably rely on the VE's conclusions. *See Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 781 (6th Cir. 1987); *Marziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240 (6th Cir. 1987). Plaintiff''s attorney had ample opportunity to, and did, cross-examine the VE at the hearing. The ALJ observed the VE's testimony and determined that the testimony was reliable concerning the type and availability of jobs Plaintiff could perform. Therefore, there was substantial evidence to support the ALJ's finding that a significant number of jobs existed in the national economy which she could perform. Thus, the ALJ did not err in relying on the testimony of the VE.

## VII. DECISION

For the foregoing reasons, the Court finds the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

Date: July 28, 2010                                  s/ *Nancy A. Vecchiarelli*
                                                      U.S. Magistrate Judge

20